## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## (DETROIT)

ALEXANDER ROSS, *individually and on behalf of others similarly situated,*

      Plaintiff,

v.

ROBINSON, HOOVER & FUDGE, PLLC,

      Defendants.

Case 2:24-cv-11717-DPH-CI

Hon. Denise Page Hood, Dist. Judge
Hon. Curtis Ivy, Jr, Mag. Judge

MOTION TO DISMISS

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Robinson, Hoover & Fudge, PLLC ("RHF"), moves the Court dismiss this matter pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, because this Court lacks personal jurisdiction over the Defendant and this matter. In support, RHF shall file its Brief in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction alongside this Motion.

WHEREFORE, Defendant Robinson, Hoover & Fudge, PLLC, respectfully requests this Honorable Court dismiss this matter for lack of personal jurisdiction, and requests such other relief as this Court deems just and proper.

### [SIGNATURES AND SERVICE ON FOLLOWING PAGE]

Dated: September 19, 2024           Respectfully Submitted,

**MARTIN GOLDEN LYONS WATTS MORGAN PLLC**

*Attorneys for Defendant*

By: /s/ PATRICK A. WATTS
Patrick A. Watts, Mo. Bar No. 61701
1200 S. Big Bend Blvd.
St. Louis, Missouri 63117
pwatts@mgl.law
P: (314) 669-5490
F: (888) 632-6937

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's ECF filing system on September 19, 2024, to John Evanchek (john@kelawpc.com) and Curtis Warner (cwarner@warner.legal), attorneys for Plaintiff.

By: /s/ PATRICK A. WATTS

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## (DETROIT)

ALEXANDER ROSS, *individually and on behalf of others similarly situated*,

      Plaintiff,

v.

ROBINSON, HOOVER & FUDGE, PLLC,

      Defendants.

Case 2:24-cv-11717-DPH-CI

Hon. Denise Page Hood, Dist. Judge
Hon. Curtis Ivy, Jr, Mag. Judge

BRIEF IN SUPPORT OF MOTION TO DISMISS

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Robinson, Hoover & Fudge, PLLC ("RHF"), submits this Brief in Support of its Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2).

## STATEMENT OF ISSUES

*Whether RHF's garnishment of Plaintiff's wages in support of an Oklahoma judgment, based upon an Oklahoma contract Plaintiff executed in the State of Oklahoma while Plaintiff was an Oklahoma resident, provides a basis for this Court to exercise personal jurisdiction over RHF.*

## CONTROLLING AUTHORITIES

<u>Constitutional Provisions</u>:
- U.S. Const. amend. V
- U.S. Const. amend. XIV, § 1

<u>Cases</u>:
- *Walden v. Fiore*, 571 U.S. 277 (2014)
- *Green v. Wilson*, 565 N.W.2d 813 (Mich. 1997)

<u>Statutes</u>:
- Mich. Comp. Laws § 600.711
- Mich. Comp. Laws § 600.715

## INTRODUCTION

Plaintiff attempts, with his Complaint, to make what amounts to a collateral attack on a valid foreign state-court judgment.  He cannot do so here, as this Court lacks personal jurisdiction over the Defendant.  This case involves an Oklahoma company obtaining an Oklahoma garnishment based upon an Oklahoma court judgment stemming from an Oklahoma contract with two (at the time the contract was signed) Oklahoma residents.  That garnishment was sought against a Delaware company, headquartered in Oregon, with an agent in Oklahoma, and it was answered by another Delaware company, with dealer locations in nearly every state and Canadian province, whose Michigan registration lists it as a "Foreign Profit Corporation."  Plaintiff's residence in Michigan – where he admits having moved *well after* he voluntarily submitted to Oklahoma jurisdiction by executing a contract there – was not known with any degree of certainty until well after the garnishment was filed, and is largely immaterial to the question of personal jurisdiction.  Because it clearly did not purposely avail itself of the benefits of operating in Michigan, the State of Michigan, and, as a result, this Court, lack personal jurisdiction over RHF.  The Court should dismiss this matter under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

On February 23, 2018, Plaintiff and his then-wife executed a contract to purchase a motor vehicle in Tulsa, Oklahoma, from an Oklahoma company, Express Credit Auto of Tulsa. *See* Ex. 2 at p. 1. That contract stated that Federal and Oklahoma law would apply. Ex. 2 at p. 5. At the time he purchased the vehicle, Plaintiff resided in the State of Oklahoma, and, accordingly, listed a Salina, Oklahoma address in the vehicle purchase contract. Ex. 2 at p. 1. According to Plaintiff, he later moved to the State of Michigan. Complaint at ¶ 11. After the move, the vehicle was repossessed while it was in Plaintiff's wife's possession. *Id.* at ¶ 17. The creditor then hired RHF to collect the deficiency from that sale.

Pursuant to the relevant contract, RHF filed an action in the State of Oklahoma. Ex. 2 at p. 5; Ex. 6 at p. 1. RHF attempted personal service at the Oklahoma address provided by Plaintiff, and the current resident told RHF's server that Plaintiff had moved out of the state, "somewhere up North." Ex. 6 at pp. 3-6. RHF, through its client-creditor, was provided an address for Plaintiff at 30819 Cooley Blvd., Westland, Michigan 48185 ("the Cooley Blvd. address"). Ex. 1 ¶ 3(d). Accordingly, RHF attempted to contact Plaintiff at that address, but its correspondence was returned by the United States Postal Service as "Not Deliverable As Addressed – Unable to Forward." Ex. 1 ¶ 3(e); Ex. 3. As a result,

RHF lacked any reliable information, at the time the collection action was filed in Oklahoma, to indicate Plaintiff lived in Michigan.[1]

RHF thus accomplished service by publication under Oklahoma law.  *See* Ex. 6 at pp. 7-9.  In so doing, RHF certified by affidavit that it had searched multiple national, state, and local databases to attempt to locate Plaintiff.  Ex. 6 at p. 8. The Oklahoma court reviewed RHF's efforts to serve Plaintiff, and in granting a default judgment, made the factual and legal determination that service was properly made:

> [H]aving conducted a judicial inquiry into the sufficiency of plaintiff's search to determine the names and whereabouts of the defendants who were served herein by publication, and based on the evidence adduced the Court finds that plaintiff has exercised due diligence and has conducted a meaningful search of all reasonably available sources at hand.

Ex. 6 at p. 11.  As such, the court "approve[d] the publication service given herein as meeting both statutory requirements and the minimum standards of state and federal due process[,]" and granted a default judgment.  *Id*.

RHF then sought to garnish Plaintiff's wages to satisfy the judgment.  RHF first named Penske Truck Leasing Corporation ("Penske") as garnishee based upon information from its client.  Ex. 6 at p. 12.  Penske responded that it no longer

---

[1] Indeed, the Complaint also claims RHF could have ascertained Plaintiff's whereabouts by contacting his ex-wife, who allegedly would have told RHF that Plaintiff lives "somewhere up by Canada."  Complaint at ¶ 31.  As such, by Plaintiff's admission, neither the current resident's information nor Plaintiff's ex-wife's would have informed RHF that Plaintiff lived in Michigan.

employed Plaintiff. Ex. 6 at p. 13. RHF then enlisted the assistance of a company called The Work Number ("TWN"), which provides employment verification information. Ex. 1 at ¶ 3(k). TWN provided information that Plaintiff was employed by Daimler Trucks North America ("Daimler"), a Delaware company headquartered in Oregon, with a registered agent in Oklahoma. Ex. 1 at p. 2, ¶¶ 3(j)-3(l); Ex. 5 at pp. 2-5 (state registration printouts for Daimler); Ex. 4 (printout from TWN showing Daimler employed Plaintiff as of July 3, 2024). Its garnishment was not answered by Daimler, but by Detroit Diesel Corporation ("DDC"), also a Delaware company (despite Plaintiff's assertions to the contrary), which did not provide an address in its responses. Ex. 6 at pp. 15-16; Ex. 5 at pp. 7-9 (state registration printouts for DDC).

Indeed, a review of publicly-available material reveals that DDC *is a part of* Daimler (which means, in a very real sense, Plaintiff's employer *is* Daimler). Daimler's website lists Detroit Diesel Corporation as one of "Our Brands." Ex. 8 at pp. 1-4; *see Our Brands*, DAIMLER TRUCK NORTH AMERICA, LLC, http://northamerica.daimlertruck.com/brands (accessed Sept. 18, 2024). On its own website, DDC calls itself "a Daimler Truck North America Brand." Ex. 8 at p. 15; *see Our Company*, DETROIT DIESEL CORPORATION, https://www.demanddetroit.com/our-company (accessed Sept. 18, 2024). That website also shows, in multiple ways, that DDC is far from being located only or

even especially in Michigan. For example, when one follows the "Careers" link on the website, one is taken to a Daimler Truck North America site that lists job postings, as of the date of this filing, in Jacksonville, Portland, Cleveland, Mexico City, and several more locations, just on the first page. Ex. 8 at pp. 21-25; *see Careers*, DETROIT DIESEL CORPORATION, https://www.demanddetroit.com/our-company/careers (accessed Sept. 18, 2024); *Daimler Truck: You Make Us*, Daimler Truck North America, LLC, https://dtna.wd5.myworkdayjobs.com/ DTNA_external?f=ORGANIZATION(199005022701)&a=null&multiline=false&i gnoreSavedQuery (accessed Sept. 18, 2024). And, based on a rough count on the DDC website's site map, its "Find a Dealer" tool connects users to over 750 dealers in forty-seven U.S. states and eleven Canadian provinces and territories. *See Find a Detroit Dealer*, DETROIT DIESEL CORPORATION, https://www.demanddetroit.com/ find-a-dealer (accessed Sept. 18, 2024); *Site Map*, DETROIT DIESEL CORPORATION, https://www.demanddetroit.com/ sitemap (accessed Sept. 18, 2024).[2]

DDC is thus no more a "Michigan company" than it is a Texas, Oregon, Delaware, Manitoba, or Northwest Territories company. And the fact that DDC is a part of Daimler very much makes Daimler Plaintiff's employer. Accordingly,

---

[2] The Court will also note that DDC's corporate registration in Michigan lists all its Officers and Directors as being located at an address in Portland, Oregon. *See* Ex. 5 at pp. 8-9.

when RHF garnished Daimler, DDC responded, and neither Daimler nor DDC objected to being garnished by RHF.  Ex. 1 at ¶ 3(q); Ex. 6 at pp. 15-18.

Throughout the process leading to the garnishment, correspondence sent both to the Michigan address provided by RHF's client and the Michigan address known to DDC was returned as undeliverable or otherwise apparently did not reach Plaintiff.  Ex. 1 at ¶ 3(s) (neither RHF nor Plaintiff's employer, DDC, had accurate address information for Plaintiff).  RHF began receiving garnishment payments from DDC, on checks from another Delaware company, ADP, Inc. (d/b/a ADP Garnishment Services) ("ADP"), which did not list DDC's address, but ADP's (in El Paso, Texas).  Ex. 7; Ex. 5 at p. 1.

In sum – RHF dealt with Oklahoma, Delaware, and Texas companies to accomplish the garnishment of an Oklahoma judgment based on an Oklahoma contract between Oklahoma parties.  As if RHF's complete lack of interaction with any Michigan company or resident were not enough, RHF had no confirmed address for Plaintiff in Michigan until Plaintiff finally contacted RHF at the end of February, 2024, after multiple garnishment payments had already been made.  Ex. 1 at ¶ 3(s).  With no knowledge of – and no reason to know about – his Michigan residence, RHF simply did not take any purposeful action in the course of obtaining this garnishment that involved the State of Michigan in any way.

## PROCEDURE AND EVIDENTIARY BURDEN

"The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). The weight of the burden on the plaintiff "depends on whether the trial court chooses to rule on written submissions or to hear evidence on the personal-jurisdiction issue (either pretrial or during trial)." *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). If the Court decides the matter on written submissions, alone, "the plaintiff's burden is to make a *prima facie* showing of jurisdiction. *Id*. But "[w]hen a pretrial-evidentiary hearing is conducted, the preponderance-of-the-evidence standard applies." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012).

Procedurally, "[m]otions to dismiss under Rule 12(b)(2) involve burden shifting." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020). "The plaintiff must first make a prima facie case, which can be done merely through the complaint." *Id*. "The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence." *Id*. In response, "the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, by affidavit or otherwise, specific facts showing that the court has jurisdiction." *Id*. (internal quotations omitted). *Serras*, 875 F.2d at 1214.

## ARGUMENT

**a.    Plaintiff's Jurisdictional Allegations**

Before discussing the legal and factual reasons to dismiss this matter, the Court must note the particulars of Plaintiff's attempt at establishing a *prima facie* showing of jurisdiction.  Plaintiff lists a number of allegations purporting to support personal jurisdiction:

a. ROSS resides in the District;

b. At all times FUDGE knew that ROSS lived in Michigan;

c. FUDGE knew that the garnishments from ROSS's wages were earned at Detroit Diesel Corporation, located at 13400 Outer Dr. W., Detroit, Michigan, which is in the District;

d. ROSS' wages, that have been garnished by FUDGE's conduct complained of herein, are earned in Michigan;

e. The taxation issues related to ROSS' wages involve, in part, the State of Michigan.

f. Wage garnishment in Michigan is a privilege to conduct garnishment in Michigan, a privilege to which FUDGE availed itself to;

g. ROSS's claim arises out of FUDGE's ultimately garnishing ROSS' wages from a Michigan located company and those garnished wages were sent to FUDGE;

h. The substantial part of the events, and the location where ROSS's damages occurred giving rise to the claim, occurred in the District;

i. FUDGE deprived ROSS of his procedural due process while ROSS resided in the District; and

j. Exercise of jurisdiction over FUDGE is reasonable.

Complaint at ¶ 4. These allegations essentially amount to three overlapping justifications: (1) that Plaintiff lived and worked in Michigan at the time of the garnishment (sub-paragraphs (a), (d), and (e)), (2) that RHF knew Plaintiff lived and worked in Michigan at the time of the garnishment (subparagraphs (b) and (c)), and (3) that Plaintiff's wages were garnished from a Michigan company (subparagraphs (c) and (g)).[3] As the below discussion will demonstrate, most of these allegations are demonstrably untrue, and all are irrelevant to the question of personal jurisdiction. As a result, Plaintiff fails to make a *prima facie* showing of personal jurisdiction.

**b.** **Plaintiff Fails to Establish Personal Jurisdiction**

This Court lacks personal jurisdiction over RHF in this matter. "Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (internal quotations and alterations

---

[3] Plaintiff's allegations in sub-paragraph (f) is a legal conclusion that goes to liability, not to personal jurisdiction, and subparagraphs (h), (i), and (j) essentially amount to conclusory summaries of the preceding allegations. As such, none of these allegations will not be treated separately in this Motion.

omitted).[4]  As the Michigan Supreme Court has noted, Michigan's long-arm statutes are "laundry-list" statutes, in that they "enumerate specific acts that give rise to personal jurisdiction." *Green v. Wilson*, 565 N.W.2d 813, 816 (Mich. 1997).  The court thus holds that "if a defendant's actions or status fit within a provision of a long-arm statute, jurisdiction may be extended as far as due process permits." *Id.*

Michigan's long-arm statutes extend "general personal jurisdiction" over corporations that (a) are incorporated in Michigan, (b) consent to Michigan's jurisdiction, or (c) carry on "a continuous and systematic part of [their] general business within the state."  Mich. Comp. Laws § 600.711.  Failing general jurisdiction, Michigan extends specific jurisdiction over companies which engage in an act or acts that create the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

---

[4] "No State shall . . .  deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Am. XIV, § 1.

Mich. Comp. Laws § 600.715.

RHF's conduct does not fall under any of the above categories.  First, Plaintiff makes no allegations that would support general personal jurisdiction, and he could not prove such allegations if they were made.  RHF is not incorporated in the State of Michigan, but in Oklahoma.  Ex. 5 at p. 10.  As this Motion to Dismiss indicates, RHF obviously has not consented to Michigan jurisdiction.  And RHF does not carry out any business in Michigan, much less "a continuous and systematic part of its general business[.]"  Mich. Comp. Laws § 600.711; *see* Ex. 1 at ¶ 3(u) ("RHF does not now [nor] has [it] ever had any contacts with Michigan").  Indeed, Plaintiff makes no allegations whatsoever that would support such a conclusion.

Turning to specific jurisdiction, none of the enumerated activities apply to the circumstances, here.  RHF did not "transact[] any business" in Michigan, in that the only transaction – the execution of the underlying contract – occurred in Oklahoma between Oklahoma parties under Oklahoma law.  Ex. 2; Mich. Comp. Laws § 600.715(1).  RHF did not do or cause any "act to be done, or consequences to occur, in the state resulting in an action for tort."  Mich. Comp. Laws § 600.715(2).  Instead, the acts complained of, here – the judgment and garnishment – were entered by an Oklahoma court, and the garnishee employers were both Delaware companies with

business locations all of the country.[5]  Ex. 5 at pp. 2-9; Ex. 8.  Plaintiff does not, and cannot, allege RHF owns any property within the state.   Mich. Comp. Laws § 600.715(3).  And this matter has nothing to do with any insurance of any Michigan resident, nor the receipt of services or materials in Michigan.  Mich. Comp. Laws § 600.715(4)-(5).

Even if RHF's conduct fell under any of Michigan's long-arm categories, though, due process does not permit this Court to exercise jurisdiction.   The Michigan Supreme Court has explained that due process "restricts permissible long-arm jurisdiction by defining the quality of contacts necessary to justify personal jurisdiction under the constitution."  *Green v. Wilson*, 565 N.W.2d 813, 815 (Mich. 1997).  "For a nonresident defendant to be subject to personal jurisdiction, he must have certain minimum contacts with the forum State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) (internal quotations and alterations omitted).

---

[5] The Michigan Court of Appeals has noted that "[t]he foreseeability of causing injury in another state is not a sufficient benchmark for exercising personal jurisdiction over an out-of-state defendant who has not consented to suit there." *Vargas v. Hong Jin Crown Corp.*, 636 N.W.2d 291, 303 (Mich. Ct. App. 2001). Instead, the inquiry must be "whether the defendant's conduct and connections with the forum state are of a kind or sort that the defendant should reasonably anticipate being haled into court there."  *Id.*

The United States Supreme Court recently explained this "minimum contacts" analysis as focusing on two aspects of the relationship between the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* (emphasis in original) (internal quotations omitted). "Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* Thus, the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.*

Second, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. Under this principle, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286. Thus, while "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties[,] a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.*

In *Walden*, a Georgia police officer (deputized with the federal Drug Enforcement Administration) seized a large amount of cash from two Nevada residents at an Atlanta airport. *Id.* at 279-81. The Nevada residents filed suit in the Federal District Court for the District of Nevada, alleging the Georgia officer had violated their Fourth Amendment rights. *Id*. at 281. The district court dismissed for lack of personal jurisdiction, and that decision was reversed by the Ninth Circuit, which held the officer's alleged actions – including, for example, filing a false affidavit – were done "with knowledge that it would affect persons with a significant connection to Nevada." *Id*. at 282 (internal quotations omitted).

The Supreme Court reversed the Court of Appeals, holding that personal jurisdiction was inappropriate because "the defendant had no other contacts with Nevada, and because a plaintiff's contacts with the forum State cannot be decisive in determining whether the defendant's due process rights are violated[.]" *Id*. at 279. The Court noted that "no part of petitioner's course of conduct occurred in Nevada." *Id.* at 288. The Ninth Circuit had erred, the Supreme Court held, "by shifting the analytical focus from petitioner's contacts with the forum to his contacts with respondents." *Id.* at 289. It was not enough that the Georgia officer knew the respondents had "strong forum connections." *Id*. This focus "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id*.

The *Walden* Court specifically found that "mere injury to a forum resident is not a sufficient connection to the forum." *Id*. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 290. As such, even though the Nevada residents' injury – their inability to access their money – may have occurred while they were located in Nevada, that is "not because anything independently occurred there, but because Nevada is where respondents chose to be[.]" *Id*. The Court further found that the "unilateral activity of a third party . . . cannot satisfy the requirement of contact with the forum State." *Id*. at 291 (internal quotations omitted).

*Walden* is clearly instructive, here, as Plaintiff claims jurisdiction based upon the same grounds as *Walden*'s Nevada residents – his own residence in the forum state, RHF's knowledge of his residence there, and the location and RHF's interaction with a third party (DDC) in the forum state. As the Supreme Court explained, a plaintiff's contacts with the defendant and the forum cannot "drive the jurisdictional analysis." *Id*. at 289. This is true even where, as Plaintiff (inaccurately) alleges, here, the defendant in question *knows* the plaintiff has "strong forum connections." *Id*. Nor is it dispositive that Plaintiff's alleged injury – the garnishment of his wages – allegedly occurred while the Plaintiff resided in Michigan, just as the injury claimed by the *Walden* Nevadans occurred in Nevada.

As the *Walden* Court explained, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether *the defendant's conduct* connects him to the forum in a meaningful way." *Id*. at 290 (emphasis added).

Indeed, much like the Georgia officer in *Walden* and the affidavit he prepared, none of RHF's conduct was directed at the forum state, here.   Like *Walden*'s affidavit, filed in Georgia, the underlying Oklahoma contract was executed in Oklahoma.   Indeed, that contract is more-strongly attached to Oklahoma than the *Walden* affidavit was to Georgia, in that it only involved parties who, at the time, were all located or resided in Oklahoma.  Ex. 2 at p. 1.  Further, RHF, an Oklahoma company, sought a judgment, and later a garnishment, from an Oklahoma court.  Ex. 6.  It directed this garnishment at a Delaware company, headquartered in Oregon, with a registered agent in Oklahoma (Daimler).  Ex. 6 at p. 15; Ex. 5 at pp. 2-5.   And the response to the garnishment – and subsequent garnishment payments – came from a subsidiary company of Daimler, another Delaware company with a foreign registration in Michigan (DDC), through a Delaware vendor located in Texas (ADP). Ex. 6 at pp. 17-18; Ex. 5 at pp. 7-9; 1.  And even if Plaintiff is correct that DDC is located in Michigan – despite every bit of available evidence showing DDC is no more located in Michigan than it is in the Yukon Territory – DDC *independently responded* to RHF's garnishment of Daimler without any action by RHF, which itself cannot form the basis of personal jurisdiction.  *See Walden*, 571 U.S. at 291

("unilateral activity of a third party . . . cannot satisfy the requirement of contact with the forum State").  Under this framework set by the United States Supreme Court, Plaintiff's location and wages in Michigan just cannot form the basis of personal jurisdiction.

These facts are similarly dispositive of the personal jurisdiction question under the due process framework established by the Sixth Circuit.  The court breaks its due process analysis into three prongs:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). The lack of purposeful availment is straightforward, here, as all RHF's actions occurred in Oklahoma with respect to parties outside of Michigan.  Indeed, the cause of action, itself, arises solely from RHF's alleged actions in the State of Oklahoma, as well as the presumptively-valid judgment of an Oklahoma court.  And, as the above *Walden* analysis demonstrates, RHF's actions and consequences simply do not have enough connection with Michigan to reasonably exercise jurisdiction, as the only conceivable connection between RHF's actions and Michigan is that Plaintiff moved to Michigan and began earning money, there, after executing the Oklahoma contract.

Given these facts and the unmistakably-applicable case law, the Court may wonder why Plaintiff chose to file in this Court what amounts to a collateral attack on a foreign state's judgment.  Plaintiff, himself, provides the answer to this question.  In his Complaint, Plaintiff tacitly admits that the normal course of action for Plaintiff and the putative class members would be "to challenge the default judgment entered against them in the State of Oklahoma."  Complaint at ¶ 70.  But – despite submitting himself to Oklahoma jurisdiction by entering into a contract, there – Plaintiff claims it is "unrealistic" for him to challenge the judgment in Oklahoma.  *Id*. at ¶ 71.  This is because, according to Plaintiff, he would be at a "disadvantage" in Oklahoma courts, and he is afraid that, because of RHF's good reputation in the Oklahoma legal community, he would get "homered," there.  *Id*. at ¶¶ 72-73.  In short, Plaintiff is – by his own admission – forum shopping.  The Court should not permit Plaintiff to circumvent due process (not to mention full faith and credit) in an attempt to gain what he perceives to be a home-court advantage.

In sum, this Court lacks personal jurisdiction over RHF.  RHF's activities do not fall under either of Michigan's applicable long-arm statutes.  Additionally, the only connection to Michigan Plaintiff can point to is his own residence in Michigan and the (inaccurately) alleged Michigan headquarters of his employer.  As the Supreme Court has explained, personal jurisdiction cannot be based solely on the Plaintiff's connection to the forum state, nor can it be based on the unilateral actions

of a third party.  Plaintiff cannot establish any other connection with the State of Michigan by which the Court could permissibly exercise personal jurisdiction over RHF without running afoul of the Due Process Clause.  As such, the Court must dismiss this matter for lack of personal jurisdiction.

WHEREFORE, Defendant Robinson, Hoover & Fudge, PLLC, respectfully requests this Honorable Court dismiss this matter for lack of personal jurisdiction, and requests such other relief as this Court deems just and proper.

**[SIGNATURES AND SERVICE ON FOLLOWING PAGE]**

Dated: September 19, 2024      Respectfully Submitted,

**MARTIN GOLDEN LYONS WATTS MORGAN PLLC**

*Attorneys for Defendant*

By: /s/ PATRICK A. WATTS
Patrick A. Watts, Mo. Bar No. 61701
1200 S. Big Bend Blvd.
St. Louis, Missouri 63117
pwatts@mgl.law
P: (314) 669-5490
F: (888) 632-6937

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's ECF filing system on September 19, 2024, to John Evanchek (john@kelawpc.com) and Curtis Warner (cwarner@warner.legal), attorneys for Plaintiff.

By: /s/ PATRICK A. WATTS